**PORT OF OLYMPIA, a Washington municipal corporation, Plaintiff—Appellant,**

v.

**LEXINGTON INSURANCE COMPANY, a Delaware corporation, Defendant—Appellee.**

No. 02–35620.
DC No. CV 01–5494 FDB.

United States Court of Appeals,
Ninth Circuit.

Submitted July 10, 2003.*

Decided Aug. 20, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2)(C).

Before REAVLEY,** TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM ***

The Port of Olympia (the "Port") appeals from the district court's grant of summary judgment in favor of defendant Lexington Insurance Company ("Lexington"), contending that the district court erred in concluding that the Port's property insurance policy did not provide fire coverage for residential property. We review the grant of summary judgment de novo. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

The Port's primary argument is that the general coverage provision, which insures "all real and personal property," trumps all other provisions of the policy. That argument, however, is contrary to the express terms of the provision. The provision states: *"Except as hereinafter excluded,* this policy covers ... [t]he interest of the Insured in all real and personal property." (Emphasis added.) The "all property" provision thus contemplates that it is subject to exclusions. One of these exclusions is the fire damage provision entitled "Fire, Schedule of Locations." The Schedule of Locations includes a column entitled "Description of Premises." Under this heading, the policy states: "Schedule on File With Western Risk."[2]

Interpreting these provisions, the district court concluded that the fire damage requirements "clearly impl[y] that only properties referenced on the schedule are covered." We agree. Construing the contract "as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance," *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 122 (2001) (internal quotation marks omitted) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 881 P.2d 201 (1994)), we conclude that the policy clearly and unambiguously limits fire coverage to those properties the Port submitted to Lexington in the Schedule of Premises. Once the Port specifically instructed its agent to remove the property in question from the Schedule of Premises, the property no

---

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

1. Because the parties are familiar with the facts, we discuss them here only as necessary.

2. Western Risk Specialists, Inc., was an underwriting company for Lexington.

longer remained covered according to the clear meaning of the policy terms.

Next, the Port contends that even if the policy only insured scheduled property, Lexington is still precluded from denying coverage because it failed physically to attach the schedule to the insurance policy. Washington Insurance Code § 48.18.080(1) provides:

No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy when issued and delivered.

WASH. REV.CODE § 48.18.080(1) (2003).

■ The Port's argument is unpersuasive. For purposes of interpreting the policy, the district court ruled that it need not determine whether the schedule itself is admissible. We agree. The explanation of the policy terms was attached to the policy; it is unambiguous and speaks for itself. Also, the Port had the burden of presenting evidence that the Hoage residence was in fact listed on the schedule of values. Having failed to meet this burden, the Port's argument concerning the inclusion of the actual value summaries is largely irrelevant to the interpretation of the policy language. Finally, the annually-updated value summaries and property descriptions are difficult to characterize as part of the "application" for purposes of § 48.18.080. *Cf. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 126 Wash.2d 50, 882 P.2d 703, 720–21 (1994) (stating that the Legislature does not "appear to have intended the (protective) attachment requirement to apply" between sophisticated parties). Here, the insured, a sophisticated party that drafted its own policy, ex-pressly declined to pay the premium on the subject property and instructed the insurer to remove the property from the policy. Coverage does not extend in such circumstances.

■ The Port also contends that the "Errors and Omissions" provision permits it to correct any failure in not insuring a particular property by paying the premium *after* the property suffers the loss. The Port's argument actually encourages the insured to "insure" its properties by waiting until a particular building suffers a loss and then pay the premium on that property only, thus saving the cost of insuring all its properties. A "fair, reasonable, and sensible construction" of the policy precludes the Port's interpretation. *Weyerhaeuser*, 15 P.3d at 122.

Finally, the Port appeals the district court's dismissal of its state law Consumer Protection Act claim. An insurance company violates the Washington Consumer Protection Act if it acts without reasonable justification in handling a claim by its insured. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash.2d 55, 1 P.3d 1167, 1171 (2000). To prevail, the plaintiff must establish that (1) the insurer violated Washington's fair insurance practice regulations, and (2) violation of those regulations caused a legally cognizable injury. *Id.* On April 16, 2001, Lexington notified the Port that "no coverage can be provided for the damages sustained to the dwelling [because] the locations involved in this loss [were] not found on the schedule of locations submitted to [Lexington]." The district court ruled that the Port failed to introduce any evidence from which a reasonable jury could conclude that Lexington's conduct caused the Port to terminate the Hoage lease and demolish the residence. We agree. Since the Port would

have terminated the lease and demolished the residence irrespective of Lexington's conduct, the Port cannot establish that but for the Port's delay it would have acted differently.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.